Thank you, Your Honor. May it please the Court, my name is Daniel Bale and I'm here for the EEOC. I'd like to reserve five minutes of my time. All right, if you'll just watch your clock there. Thank you, Your Honor. As you know, this case is about whether or not the District Court clearly erred in finding that the EEOC had litigated this case in bad faith. We obviously believe that that was a clearly erroneous finding of fact and an abuse of discretion and therefore must be reversed. I think it really bears emphasizing at the outset, as we emphasized in our briefs, that this case, if this Court were to affirm, this would be the very first time that the Ninth Circuit would have found that a prevailing defendant is entitled to attorney's fees. Moreover — The Ninth Circuit is known for doing things for the very first time. Well, Your Honor, respectfully, we see no basis for this being the first time. This would also be the first time that this Court would have found that the EEOC specifically has litigated a case in bad faith. And respectfully, we just don't believe that there's evidence in the record to support that finding. First, on the pure legal question of whether prevailing defendants can ever be entitled to attorney's fees. Respectfully, we didn't raise this matter before the District Court. But as you know from reading our briefs, this Court has held that it can reach pure questions of law. And — Although we rarely do. Rarely do. I'll just then note in passing, it's our view, of course, that under this Court's decision in Richardson, combined with what the Supreme Court has repeatedly said in cases like Christiansburg, Alyeska, and Chambers, that when Congress has specifically enacted a one-way fee-shifting statute like it has under the Fair Labor Standards Act and like it has, therefore, under the ADEA, that fees under the ADEA are categorical. If Congress has categorically precluded fees to one party, in this case a prevailing defendant, then Congress has foreclosed the possibility of a court resorting to its inherent powers. Eliminated 1927 completely by doing that? Your Honor, in this case, it's our view that 1927 shouldn't be applicable. Again, the Supreme Court in Chambers has specifically noted that it only applies to sanctioning a particular attorney and not a party. And this Court has also held that in cases like Beverly — Ingrid Beverly Hills Bank Court. This is all stuff you didn't raise in the district court. That's true, Your Honor. And, of course, this Court doesn't have to reach this particular question of law to reverse here because, of course, the crux of the matter is whether or not the EEOC litigated this case in bad faith. And this Court has repeatedly held that to find bad faith, there are essentially two ways you can do that. One, a litigant can recklessly bring a frivolous case, or if the case is non-frivolous then there has to be something else. There has to be some sort of essentially improper purpose. The case was brought to harass the opponent. The case was brought to sort of gain an advantage, a tactical advantage. The district court said you did exactly that. The plaintiff knowingly or recklessly pursued completely baseless litigation. To support this assertion, defendant argues the plaintiff knew from the outset it had no admissible ages statement. Right. And conducted a one-sided sham investigation. For example, the defendant complains that the plaintiff stated at a case management conference that it had a star witness who would establish the existence of an ages statement. However, the star witness turned out to be Anderson who had refused to provide an affidavit and who swore under oath that she could not say such a statement had been made. So this is really the major controversy. Is that clearly erroneous? I believe it is clearly erroneous, Your Honor, and I'll tell you why. The major dispute in this case seems to have centered in the district court and in the plaintiff on whether or not we had direct evidence of discrimination or at least evidence that a witness at some point said that the decision-maker in this case referred to the victim, the charging party, as an old, tired government employee. So what is the evidence on that? There is clearly evidence in the record, in the excerpts of record here on page 206A. The EEOC's investigator's notes clearly say that on October 4th, 2001, Sylvia Anderson called the EEOC's investigator and told the EEOC's investigator that the decision-maker, Mayberry, called Toth an old, tired government employee in her deposition. That's not admissible evidence, is it? I think it is, Your Honor. How would that be admissible when Anderson denies it? She has never once denied telling the EEOC's investigator that Mayberry made that comment. Never once. If you look in her deposition. So is that impeachment testimony on Anderson's claiming that she doesn't remember what she said? No, I think. And if I can develop this a little bit, Your Honor, what happened is she told the EEOC's investigator that Mayberry made that statement. Then about 17 months later, she could no longer be sure that the word old specifically was used. But she has never recanted. She's never. And that raises another point that I'll telegraph. Maybe it's from that 17 point months, 17 months point later that you ought to calculate attorney's fees, not from the earlier point. Well, Your Honor, again, I think it's critical to recognize that she's never recanted the statement that she told the EEOC that she made the statement. All she's. What you have at that point is basically whether there's a credibility issue that she could be faced with. Right. Right. And this Court in Bruno's Restaurant has said that a party isn't acting recklessly or frivolously just because there are possible witness credibility problems. You can't expect a litigant to bring an anti-claim. So what we have is not that she denied making the statement. In fact, repeatedly in her deposition, she said, yes, I did tell the EEOC investigator that she made that statement. She said it. She said, I truly believe that. She actually told the EEOC's investigator that Mayberry had made that statement after taking an entire day to think about it. So what we really have is whether or not the jury, actually for purposes of this argument, whether or not the EEOC was reckless in arguing that a jury could believe that her recollection was better closer in time to the actual event. What effect does the law of the case, for the lack of a better term, have on this in connection with the memorandum disposition that was used to determine this case? And here we see things in the memorandum disposition such as burnout, not age, was the unmistakable connotation. There was no evidence of old in terms of age. I mean, are we somehow influenced or bound by what the memorandum disposition said about the state of the evidence? I think it's important to recognize, and the EEOC concedes, that we're not re-litigating the merits of the case. Again, for purposes of this appeal, the question is not whether we had direct evidence, whether the conclusions of the panel majority in the previous appeal were erroneous. We're not re-arguing the merits. The question for this fees appeal is whether it was reckless for us to believe that a jury could believe that Anderson had made that statement and that Mayberry, in fact, didn't make that statement. And, Your Honor, as you can see --- But what effect does that have where you have a split panel making a decision and one member of the panel says, actually, this case should not have been dismissed on summary judgment? Right. And, again, in this case, you can only find bad faith if you find that this case was reckless, was frivolous, and then recklessly brought, right? What standing does Judge Reinhart's dissent have? Well, this Court has never spoken on that directly, but two other circuits have. And J.B. Hunt, the Second Circuit, and the Eleventh Circuit in the Busbee case, specifically said in the context of a Title VII fees matter that a dissent on the merits should all but preclude a finding of frivolousness. It shows that reasonable minds can disagree. And that's the crux of our argument here, Your Honor, that the dissent shows that reasonable minds could have disagreed as to the merits of this case. So we have to assume that Judge Reinhart is a reasonable mind? I would respectfully urge you to find that. Yes, Your Honor. It has some sort of related analogy to when we look at certificates of appeal and figure whether any reasonable jurist could find that there is an issue or a potential constitutional issue here. Right. And I think the easy way to dispose of this case in our favorably for us, if you're And if it's not frivolous, then there's no basis for bad faith here because there's no other evidence of an improper motive at all. The standard is not frivolousness. It also bears repeating that this case poses the question of whether the highest possible hurdle has been reached by the defendant in showing its entitlement to fees. This isn't a substantially justified standard for fees under the Equal Access to Justice Act. It's not Are you arguing that as a bright-line rule, the existence of a defense always would preclude a 1927 finding? The existence of a dissent? The mere existence of a dissent would automatically, as a bright-line rule, preclude a conclusion against you. No, Your Honor. I don't think you have to go that far. I think the rule I would argue is that it strongly militates against a finding that the case was frivolous. And why that's so critical here is because the only reason the district court How do we decide whether something strongly militates? Well, it's relatively easy in this case because the only reason that the district court found bad faith is because it said this case was so clearly frivolous that we were reckless, the EEOC was reckless to bring it. Well, the fact that there's a dissent on the merits shows, again, that reasonable minds can disagree as to the merits, which means that it's not frivolous, and therefore there can be no bad faith because there's no Again, that's a bright-line approach. The existence of a defense can't possibly be. Don't we have to take a look at the dissent and see whether the dissent makes any sense in this context? Maybe it's just dead wrong. I suppose if the dissent was horribly reasoned, Your Honor, or obviously contrary to existing precedent, then you might be faced with that dilemma. But we submit that in this case that's not at all true. And, again, if you just look at the standard as the Second Circuit did in the J.B. Hunt case You know, the difficulty is we find ourselves kind of coming and going and relitigating the merits if we go about it that way. Right. Well, again, the question doesn't have to be whether the original panel opinion was correct or either whether the dissent was obviously correct or incorrect. It's just whether it suggests that reasonable minds could disagree as to the merits. And, therefore, if that's true, the case couldn't be frivolous. And if it can't be frivolous, there's no the district court's finding of bad faith is clearly erroneous. I read the district court as saying you just never had any evidence, admissible evidence, that age was driving this. Well, and, again, Your Honor, this Court has said on numerous occasions that you have to look at the totality of the evidence, and we have to look at what we had not just with respect to the statement about whether old was uttered, but also the evidence of pretext that we proffer here. The decisionmaker in this case specifically testified that the only thing she based her decision on was the interview performance and, in part, a reference from a prior supervisor. And Judge Reinhart, in dissent, carefully, we believe, adopted our arguments that we had presented pretext evidence on both of those points. This is a curious case because she was trying to get a job that paid less. That's the job she didn't get, so she ended up with a job that paid more. That's true, Your Honor, but she also specifically testified that the reason why she wanted to come back is because she really missed the work. She missed the job. It wasn't about the pay for her in her decision to come back. She liked she missed the pay. But she also said she thought she'd be able to get the same pay. Well, she thought that she may have been entitled to the same pay. Which was wrong. That issue was never definitively litigated below. The district court, for the first time, reached that conclusion in the fees determination, but it wasn't a basis for granting summary judgment in this case. Don, on the question when they hired the other people, the criteria, they would prefer bilingual or experience. Is that right? Well, the vacancy announcement said that preference will be given to those who have experience. This particular experience, and Tocque was the only person who had experience working in this particular office, much less for six years, and to bilingual applicants. However, again, the decision maker in this case never once testified that that was the reason why she didn't select Ms. Tocque. Because she was not bilingual. And that's something that Maricopa has advanced as a theoretical legitimate non-discriminatory reason that could have supported the decision of her hire. But the decision maker here never said that. So again, the issue in this case is that it wasn't reckless for the EEOC to be arguing that we had sufficient evidence of pretest as to the legitimate reasons the decision maker herself actually gave. Did she have equivalent education to the seven other people who were taken? Well, Your Honor, again, the decision maker didn't make that comparison. So respectfully, I'm not sure that it's altogether relevant. Well, it's part of your pre-advisory case, I guess. Well, she made the certified list. And the Maricopa County human resources person said that those on the certificate of eligibility were clearly qualified and had the qualifications that were threshold for being considered. And moreover, this Court in Lyons v. England specifically said that whether or not someone is qualified for purposes of a prima facie case is a jury question. So we respectfully submit there was at least – it wasn't reckless for the EEOC to argue that she was qualified for purposes of making that a prima facie case. Do you want to save the remaining time? Yes, please, Your Honor. Thank you. Good morning. May it please the Court and counsel, I'm Catherine Baker, and I'm here for Maricopa County. To begin with, this question that's been raised by the EEOC about whether a dissent precludes a finding of bad faith, we have cited to the court the Oregon Natural Resources Council case, a Ninth Circuit case, and the Thomas v. Peterson case, a Ninth Circuit case. The rule in the Ninth Circuit is, although the dissent is relevant and may be considered as a factor, the fact that different courts or a dissenting judge reach different conclusions does not preclude a finding of bad faith. But doesn't the dissent here make it pretty difficult to find bad faith? I mean, Judge Reinhart is suggesting that there is a genuine issue of material fact and goes through the facts and the record and says, you know, there's enough. With all due respect to Judge Reinhart, I believe that the dissent is very conclusory and the conclusions reached by Judge Reinhart are contrary to applicable law. He said that the opinions of non-decision makers regarding interview performance and negative attitude could raise an issue of whether Mayberry was right in her assessment. But, of course, we know the issue was never whether Mayberry was right. The issue is whether Mayberry truly believed the reasons that she expressed. And there was no evidence ever presented by the EEOC that could call into question Mayberry's state of mind. Let me give you an example. The poor interview performance was based on her assessment that Toth, for one, was dressed casually. Toth admitted in her deposition that it was casual day at the clerk of the court and that she came over and she was wearing denim pants, which Mayberry said looked like jeans to her. The underlying facts were never in dispute from which Mayberry reached her assessment. Therefore, when Reinhart says a non-decision maker may have reached a different conclusion, a non-decision maker may have looked at it differently, it is not the appropriate standard. I guess I had a question about whether we have a case or why, if you have four people doing an interview and three of them say the person interviewed fine and the fourth says, no, there were all these problems, why that isn't at least evidence of pretext that you could say, well, the stated reason that the interview went badly was not the real reason. That seemed to be Judge Reinhart's point. Because the requirement for pretext is that the EEOC had to offer specific and substantial evidence of pretext. And the analysis for pretext is, did the decision makers express reason? Was that their true reason? And whether others disagree is not dispositive of that. And in this case, it's undisputed that the facts upon which Mayberry made her assessment existed. They were undisputed. For example, Toth admits and others admit she went into the job interview having previously left a higher paying job in a dispute or a disagreement, a dissatisfaction over pay and benefits. And she goes to that interview with Mayberry and she complains again about the pay and benefits. Everybody else in the room may have thought, oh, gosh, that's okay. But Mayberry could reasonably assess that and say, that's not an employee that I want. You see, the problem with the way you're describing it is there would never be a factual issue on this. Because all the you would have to say the decision makers said A, B, C, D, E. And as long as that was their own view that they concocted or that they believed, there would never be a factual issue because you would say because that's what they said. So I'm not sure how your approach would work in real practice in terms of a trial and actual factual issues. Maybe you can kind of put it in context. Sure. Thank you, Your Honor. For example, had Toth undoubtedly come dressed appropriately for the interview, not been wearing jeans and not apologized for her casual dress, had she, for example, been wearing a suit, that would impeach Mayberry's claim that she was improperly dressed. Well, she did testify that although she had black denim, she had a nice green jacket, and everybody else in the interview situation said she seemed to be dressed appropriately. There wasn't an issue. So it didn't seem like that was she had come in torn jeans or in a T-shirt. Well, she apologized for her dress. She admitted apologizing for her dress. Well, in context, it was a sort of a yes, it was casual day. I'm not in a suit. It's hard to say that the, you know, I guess I'm still troubled by why the perceptions of the other three interviewers there isn't enough at least to say that it was not the real reason that she came in this green suit jacket. Because it doesn't tell us anything about Mayberry's state of mind. All it tells us is that others could disagree. And the law requires the EEOC to prove that Mayberry's reason, the reasons she expressed, were not the true reasons. But unless we can get into her mind, don't we have to look at the circumstantial evidence? I guess that's, I mean, how else do you show pretext when you say here's what she said her real reasons were, and here's our evidence as to why that's a pretext? The problem, Your Honor, here is that there was never any evidence impeaching Mayberry's reasons. For example, and I can hypothecate where you might have a question of fact. For example, had Toth not come to the interview and complained about the pay and benefits, had she not said, as reflected in the notes, the victims used me as a whipping post. In other words, as a victim witness advocate for me. I'm being mistreated by the victims. I'm there to help. Had there not been that objective evidence, had she not admitted saying that, then perhaps Mayberry's reasons could be impeached. But here there was never any such evidence. Everywhere we turn, everything supported what Mayberry said. Mayberry said she had a poor attitude. Jan Jennings told her, don't even hire her. She's got a bad attitude. Toth admitted saying things like, this place sucks and I can't wait to get out of here. Toth admitted that she didn't like the pay and benefits. Every person in the interview room agreed that she had a bad attitude. Anderson told the EEOC before they even filed this case, she spent half of her interview telling them, although they didn't put it in her notes, in their notes. She testified to it. Toth has a dog of a case. She has a bad attitude. That's why she wasn't hired. And that's why she had outstanding performance evaluations while she was there? No, those are the perceptions of others. Mayberry did not offer those performance evaluations. But let me answer your question. The difficulty I have is when you go to trial, then you argue all this. And we're at a summary judgment stage. Now, the Ninth Circuit panel said, well, not enough. Judge Reinhart said, well, if you dissect it and look at it, I think there is enough. So here now the question is, even one level further, was it absolutely frivolous to pursue this? It was completely frivolous, Your Honor, with all due respect. Well, let me ask you, let me just go back on then the point about the old person. Okay. There's two aspects to that testimony, the old and then the tired and burned out employee. Well, there's not any suggestion that she supposedly did back up her testimony that she had been told that she was tired and burned out, correct? Yes. And aren't those words surrogates in some ways for sort of the old employee? No, Your Honor. Can't they be interpreted that way by a jury? Yes, Your Honor. If I could just say one sentence about the job evaluations. Why don't you answer my question first, and then you can go back if you wish. All right. Thank you. I'm sorry. What was the question again? Aren't these burned out and tired? Those are surrogate words that are sometimes used for, you know, a worn-out old employee. Both this Court in the underlying appeal and the district court found that they were not. In other words, they are not unequivocal statements regarding age. And in this case, what we have is Toth going to her interview and saying, tired of the pay and benefits, doesn't like being treated as a whipping post, left the job because of job dissatisfaction. And so in this case, when Mayberry says, I've just interviewed a tired, burned-out government employee, it was very clear that that's what she was referring to. In fact, the comments about a whipping post are referred to in the notes. So there cannot be a reasonable inference that, oh, my gosh, even though all the evidence supports the fact that Toth went to the interview and acted like a burned-out government employee and, in fact, had left this job because she was burned out with it, that when Mayberry recognizes what is an obvious fact that no one disputes, that she really means old. It is not. Has she, has Anderson ever said that she, Anderson, didn't use and report the word old? Anderson never said she did. And here's the question. Well, Anderson never said that she did. The word old never came out of Anderson. Did she say she did not? No, she doesn't remember. She said she doesn't know whether the word old was in the statement. Okay, so she doesn't know. But we have a written statement by an EEOC investigator. No, we don't, Your Honor. Well, we have a statement that he says that, right? No, we don't, Your Honor. What we have. What do we have? We have absolutely nothing admissible from the EEOC. We have the investigator. What do we have from the EEOC on the point old? We have the investigator, a stipulation that the investigator will never testify. So we have nothing from the investigator. Well, but you're back on the, I want to get into the attorney's fees thing. The EEOC investigator's notes that were taken of an interview on October 4, 2001, say that Mayberry called Toth, according to Anderson, who was there, a recipient in person. The notes say that Mayberry called Toth an old, tired government employee. Is that what the notes say? Excuse me? Yes, Your Honor. Well, yes or no? Is that what the notes say or not? I don't know what the notes say. They were never admissible. I don't know what the notes say. What I know is in the deposition of Anderson, Anderson couldn't repeat because Anderson is the only witness who would ever testify on this fact because the investigator wasn't there and the notes are not admissible. The investigator would not be a witness. The notes aren't admissible. I couldn't care less whether the notes are admissible. Just wait a minute. I couldn't care less whether the notes are admissible. Right now I care whether this was a reckless and frivolous proceeding. And so I'm looking at these notes and the notes seem to suggest that Anderson said to the investigator, an old, tired government employee, let's assume a slightly different case. Let's assume that Anderson came in and said, yeah, maybe we did call her an old, tired government employee. Do you think we'd be here right now? I don't know whether we'd be here right now, Your Honor. Well, if the statement had been made she was an old, tired government employee during the investigation on October 4th. Probably not. Probably not. So that's the question of whether or not this is reckless. And it wasn't until May 5th, 2003, that we found out that Anderson lacked certainty about whether she said it or whether she didn't say it. So how can you say it's reckless if there's a possibility that you've got a witness who was there, a precipient witness, saying the decision maker, Mabry, used the word old? Here's why. We don't have a clear record of what the EEOC asked Anderson. Anderson didn't say the EEOC asked me this statement. You keep going back to the case, and this is an attorney's fees fight. But what I'm saying, Your Honor, is we have to look at what did the EEOC have at the time it decided to go forward. What did the EEOC have? They had an investigator saying that one of the precipient witnesses says that Mabry called her old. Remember, the investigator is the EEOC. And what we don't have is any evidence of what the EEOC actually asked Anderson. We don't know whether they said to Anderson, did she say old, tired government employee, or did she say? What was your stipulation then? You said this came in by stipulation. No, nothing came in by stipulation. What we stipulated to was that the investigator would not testify. The investigator was not going to testify. The only source of information about what Anderson told the EEOC was Anderson. And what I am saying, Your Honor, is that we don't have from the EEOC at the time it filed the case any evidence that Anderson said old was said. What we have is a suggestion by the EEOC that is not reflected. They didn't keep a true record of what they asked Anderson. That's the way the EEOC works. That's how the world works. Very few people bring the court reporter to the interview. The EEOC takes interviews. Right, but you don't have to. The EEOC takes every interview with the Maricopa County witnesses, and I sat there while they taped them. And they didn't keep a clear record of what they asked Anderson. Their star secret witness who they hid from me, Anderson told them she wouldn't swear in an affidavit that the word old was said. This Court recognized in the appeal that all Anderson ever said is that was said, that. She said it, that was said. That's what she confirmed back to the EEOC investigator. But what we don't know is what that was, what it was. What did the EEOC investigator actually ask Anderson? We have no record of that. We never have the word old coming from Anderson. We don't have an old statement from Anderson that needs to be allegedly recast. Does the whole case, in your view, then hinge on that? They had no evidence. They had no evidence that age had anything to do with their decision. If Anderson said old, it might. If Anderson said old, they might. If Anderson said old to an investigator, it might suggest that the investigators in the EEOC weren't and wasn't reckless in pursuing the case. Well, Anderson, if we recall, testified. She told the EEOC investigator that Tulse rehiring had nothing to do with age, that she had a bad attitude, and that if she was claiming age discrimination, she had a dog of a case. Anderson said, if you would have given me both statements, if the EEOC investigator had been fair and not biased, and would have said what I really need to know is what old said, she testified in her deposition. I would have told the investigator back then I didn't know what was said. What do you make of this Concho's deposition where they ask her about the same statement, and she says, yeah, she remembered telling – I don't remember what Jamie said, but she said something like she's a tired government employee or she's an old government employee or she looks like it. So does Concho's testimony, is that also problematic? No, Your Honor, but thank you for asking about that. The EEOC has always misquoted the Concho's testimony. What Concho's testified was that a third person came to her and said, did Mayberry say something about old, and that Concho's, in thinking out loud, said to this third person, I'm trying to remember what she said, did she say old? Did she say tired? No. I believe the statement was tired, burned-out government employee. That's what Concho's testimony right here. Well, I'm just looking at the testimony of the third party. I'm looking at it right here from the depot page, and it says, I don't remember what Jamie said, but she said something like she's a tired government employee or she's an old government employee. This is on – I don't know what the ER is, but it's from her depot. That's what she was telling a third party. And then she said, no, I believe what she said was tired government employee or burned-out government employee. She was thinking out loud when she was talking to the third party, and then she confirmed to the third party, I think that what she said was tired, burned-out. She always testified that she was thinking out loud and talking to a third person and that she could not say, gee, I heard Jamie Mayberry say old. There's little doubt that the EEOC had a weak case. There's little doubt about that. The question is whether it went so far down the weakness scale that it became reckless. The other thing is, Your Honors, just to emphasize before I wrap up, that the EEOC had an obligation every step along the way to reassess its case and determine that it was pursuing it in good faith. And the district court sat and had an exchange with the EEOC attorney, much as we're having an exchange today, and said, how are you going to prove this? How are you going to prove this? How does this come in? And every step along the way, as the evidence was gathered that favored the respondent, and even though it wasn't reflected in the EEOC notes when favorable evidence to Maricopa County was adduced, in the trial court, in our proceedings, in the depositions, in the discovery, it was in every step along the way. The evidence supported us every step along the way. And any reasonable attorney that was evaluating this case would have known they had no chance of being successful. And had it not been the EEOC, who apparently believes that they are a Teflon litigant in an age discrimination case, any other attorney would have gotten rid of this case, would have dropped the case, would have resolved it, because there was no way to be successful. I don't know. We see a lot of employment cases in the Ninth Circuit, so I think it's pretty hard to make that statement. But we have your point well in mind. Thank you. Thank you. I just urge the Court, please, look at the excerpts of record, pages 308, 310, 311, and 312. It is crystal clear from Anderson's deposition that she categorically stated in her deposition that she told the EEOC that the word old was used. In fact, on page 310 of her deposition, she is shown the EEOC's investigator notes, which are on page 206A of the excerpts of record. And she's asked about whether she made that particular statement, which clearly includes the word old. In her deposition, the only thing Anderson did is say, I can no longer be sure she used the word old, but at the time, I truly believed she said that. She said it. I told the investigator that. So the EEOC, even from the time of her deposition forward, all we had was a slight equivocation because her memory possibly had faded, but it still wouldn't have been true. She said, jury, do you believe that what she said 17 months earlier was perhaps more accurate as to what Mayberry said? Now, yes. Yeah, well, you're extracting this also from everything else that Anderson said, was to bury the employer. But respectfully, Your Honor, again, Anderson. Absolutely buried her. Anderson isn't an expert in employment discrimination cases. She didn't, she wasn't aware of all of the evidence that the EEOC had in bringing this case. She doesn't, I presume she doesn't know what the pretext standards are. And, again, in addition to what Anderson said, as you were questioning Ms. Baker, Conchos independently, on her own, without any solicitation from anyone, when asked what happened in the interview, on her own opined she may have said old. Now, granted, she didn't definitively say, I'm positive that she used the word old. And Anderson, in her deposition, to be sure, could no longer positively say it. But she never recanted. She never said, you know what, now. All right. I think we're duplicating the point. So we have everything in mind. We appreciate the briefing and the argument. The case just argued of EEOC versus Maricopa County is submitted.
judges: Trott, McKeown, Ikuta